COOPER v. FIDELITY DEVELOPMENT CO. et al.

(Supreme Court, Appellate Division, First Department. November 3, 1911.)

1. MASTER AND SERVANT (§ 107*)—EXPLOSIVES (§ 9*)—SAFETY OF PLACE OF WORK AND APPLIANCES.

A seller of oil in a tank on its premises was not bound to provide a safe place of work for the employés of the buyer engaged in removing the oil at night, as affecting liability for their death from an explosion of the oil; but the buyer was bound to furnish the employés with a safe place and proper appliances, including proper light.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202; Dec. Dig. § 107;* Explosives, Dec. Dig. § 9.*]

2. MASTER AND SERVANT (§§ 137, 273, 274*) — WARNING EMPLOYÉ — SUFFICIENCY.

That a representative of the seller of oil in a tank on his premises warned employés of the buyer, who were directed to remove it, not to smoke around the tank, did not affect the buyer's duty to protect his own employés against an explosion of the oil, though the warning was competent on the question of assumption of risk, and possibly upon the question of contributory negligence in using a lantern.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 936–949; Dec. Dig. §§ 137, 273, 274.*]

3. MASTER AND SERVANT (§ 289*)—DEATH OF EMPLOYÉ—CONTRIBUTORY NEGLIGENCE—JURY QUESTION.

Whether employés, killed by an explosion while removing oil from a tank at night, were guilty of contributory negligence in using a lantern, *held*, under the evidence, a jury question.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 289.*]

Scott, J., dissenting in part.

Appeal from Trial Term, New York County.

Action by Jane A. Cooper, administratrix, against the Fidelity Development Company and another. Judgment dismissing the complaint, and plaintiff appeals. Reversed as to defendant Development Company, and affirmed as to defendant Bronx Gas & Electric Company.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

William R. Hill, for appellant.

John D. Fearhake, for respondent Fidelity Development Co.

John Vernou Bouvier, Jr., for respondent Bronx Gas & Electric Co.

INGRAHAM, P. J. We all agree in the affirmance of this dismissal as to the Bronx Gas & Electric Company. I think there was a cause of action in the complaint as against the Fidelity Development Company.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It was alleged in the complaint that the plaintiff's intestate was at the time of his death in the employ of the Fidelity Development Company as a driver of a two-horse wagon; that the gas company was in possession of certain real property situated in the city of New York, upon which there was constructed a large iron tank about 10 feet from the ground, which contained about 7,000 gallons of oil, which was highly explosive, which fact was known to the Fidelity Development Company; that on or about the 26th of September, 1907, the development company purchased the oil in the said tank from the gas company, and the gas company permitted the development company and the deceased to enter upon its property for the purpose of removing the said oil; that the defendants had knowledge that the said deceased had no experience in handling oil and no knowledge of its explosive qualities; that the defendants failed to instruct the said deceased as to the dangerous and explosive qualities of the said oil, and failed to instruct him as to the proper and careful manner of handling said oil, and permitted him to handle the said oil at night without such instructions; that the development company directed the deceased to pump the oil contained in the said tank from the tank to its wagon, and then to cart it away and sprinkle the roads thereabouts with the oil, and to continue so to do during the night of September 26, 1907, and furnished him an iron suction pump with which to pump said oil; that on the evening of the said 26th day of September, 1907, by reason of the handling of said oil, an explosion occurred, by reason of which the said Joseph Cooper was killed; that the said deceased lost his life through no negligence or fault on his part, but solely by reason of the negligence of the defendants, and each of them, and also by reason of the failure of the defendant the Fidelity Development Company to provide him with a safe place to work. The answer of the development company admits that it failed to instruct the deceased as to the dangerous and explosive qualities of the contents of said tank, or as to the proper and careful manner of handling said oil.

When the case came on for trial, counsel for the plaintiff opened his case to the jury. From that opening it appeared that the development company purchased the oil from the gas company; that the gas company's superintendent, one Butler, went to the tank with a representative of the development company, and the deceased was at that time on the premises; that the deceased and another man were told to pump the oil out of this tank by means of a pump that was supplied by the development company; that Butler, the representative of the gas company, was there until the deceased and his fellow workman rigged up the pump, and then Butler left; that Butler said, in the presence of the deceased and his fellow workman, that it was all right, but that they must not smoke around the tank; that these men continued to work and pump this oil out of the tank up to about 11 o'clock at night; that the yard was dark, and there was no light there; that these men had a lantern, which they had used from the time it became dark until about 11 o'clock, when the tank exploded; that the deceased and his fellow workman were directed to work until they had pumped all the oil out of the tank; that Cooper and his fellow workman were both

killed by the explosion; that about a half hour before the accident some men were sent down to take food to the men at work, and while Cooper and the other workman were eating this food they pumped the oil; that Cooper and his associate cautioned these men while at work not to smoke around the tank; that about a half hour after these men left the explosion occurred.

[1] It is not alleged in the complaint, nor was it stated in the opening, that Butler, the representative of the gas company, had anything to do with the two men at work, except to be present when the cover of the tank was removed to enable the oil to be pumped out. He had no knowledge that the men were instructed to work at night, or after it became so dark that artificial light had to be provided for their work. He cautioned them against smoking around the tank, and so far as appears this caution was sufficient, unless the men had to work after dark. He was justified in assuming that the employers of these men would give them the necessary instructions to protect them from injury while at work at the tank, and there was no duty imposed upon the gas company or its representative, Butler, to furnish the development company or its employés with a safe place to work. I think, however, there was an additional duty imposed upon the development company to furnish its employés with a safe place to work and proper appliances to do the work required of them. Here were men employed by the development company to handle a dangerous substance, where an explosion was to be anticipated, unless great care was used in performing the work. When the development company instructed them to continue the work until the oil was all pumped out, which would compel them to work after dark, it was the duty of the development company to furnish them with proper light, so that they could do their work without being exposed to the danger of an explosion. It is alleged in the complaint that the development company had knowledge of the explosive character of this oil, and it was certainly not a safe place for these men to work after dark, unless such light as was necessary to enable them to carry out their instructions was furnished, of such a character that it would not cause an explosion.

[2] The fact that Butler cautioned them not to smoke around the tank was not a performance of the obligation imposed upon the employers of these men, and the warning that he gave was only to refrain from smoking—possibly a sufficient warning if the work was to be done during the daytime, when no artificial light was necessary, but it was not given by the development company or on its behalf, and cannot, I think, be said to be a compliance with the duty which devolved upon the development company to protect its employés.

[3] The warning was competent, as bearing upon the assumption of risk by the deceased, or possibly upon the question as to whether they were guilty of contributory negligence in using a lantern; but I think that question was one for the jury. It seems to me there was an absolute failure of the development company, the deceased's employer, to furnish these men with a safe place to work and safe appliances with which to do the work, or, at any rate, there was a ques-

tion for the jury to say whether the obligation of the development company to its employés was performed.

The judgment in favor of the Bronx Gas & Electric Company should therefore be affirmed, with costs, and the judgment in favor of the Fidelity Development Company should be reversed, and a new trial ordered, with costs to appellant to abide the event.

LAUGHLIN, CLARKE, and DOWLING, JJ., concur. SCOTT, J., dissents as to the reversal.